IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRCT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| PHILLIP HILL.<br>*Plaintiff,*<br><br>v.<br><br>LAKEVIEW LOAN SERVICING,<br>LLC and LOANCARE.<br>*Defendents* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:22-cv-01069-O |

## PLAINTIFF'S BRIEF IN RESPONSE TO THE DEFENDANT'S 12(b)(6) MOTION TO DISMISS

Plaintiff, Phillip Hill, hereby submits this, his brief in response to the Defendants, Lakeview Loan Servicing, LLC and LoanCare, LLC's Motion to Dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(6), and would respectfully show the Court as follows:

### I.   LEGAL STANDARD

A court looking at a motion to dismiss under FRCP 12(b)(6) must assume that all material facts contained in the complaint are true and resolve all inferences in the plaintiff's favor. Further, FRCP 12(b)(6) motions are disfavored in light of the liberal pleadings and policies.

A complaint need only show the plausibility of the allegations made, and whether the facts given could support a claim alleged by the Plaintiff. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp v. Twombly,* 550 U.S. 544, 555-56 (2007); *Doe v. Columbia-Brazoria ISD,* 855, F.3d

681, 685-86 (5th Cir. 2017); *Woods v. City of Greensboro,* 855 F.3d, 639, 652-53 & n.9 (4th Cir. 2017).

In short, the courts will (1) identify the allegations and determine whether they are simply conclusory, and not entitled to an assumption of truth, and (2) consider the factual allegations to determine if they plausibly suggest a claim for relief. *Iqbal,* 556 U.S. at 679.

Plaintiff has alleged, among other claims, that the Defendants violated RESPA by failing to adequately respond, along with breach of contract. Plaintiff is not responding to the other claims listed in his Original Petition and motioned for dismissal by the Defendants.

## II.     ARGUMENT AND AUTHORITIES

**a.     Plaintiff's Breach of Contract Claims are Properly Pled.**

1. Dismissal under 12(b)(6) may be proper when the Plaintiff *fails* to provide both (a) fair notice of the nature of the suit, and (b) plausible factual allegations to support their claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

2. In essence, the court will determine whether the claims are conclusory, and if the factual allegations plausibly suggest a claim for relief. *Id.*

3. Conclusory allegations are not enough to survive a 12(b)(6) motion, and the plaintiff is required to supply more to show the plausibility of a claim.

4. However, in the Plaintiff's Original Petition, he supplies more than conclusory allegations, supplying the how, what, when, and where of the aggrieved acts done to him.

5. What's more, the Plaintiff has explicitly detailed both the prior contractual history of the parties (specifically Lakeview) while also outlining the representations which were given and which Mr. Hill relied upon which induced him into sticking with Lakeview for the re-financing of his home—in addition, written notice was provided listing steps required by the Plaintiff for

approval of the refinance which can be summed up as follows: (1) review and sign the loan application; (2) supply identifying documents to establish that you are the borrower (i.e., government issued ID); and (3) return the documents and signatures back to Lakeview—this was all that was asked for by Lakeview in moving forward with the loan refinancing.

6.      As is stated in the Original Petition, the Defendant, Lakeview, solicited Mr. Hill without his prompting, relayed to him that he was preapproved for a home loan refinance which would lower his interest rate, and that all he needed to do was fill out a simple application and then he would be approved.

7.      Part of that application process, as stated by Lakeview, was to go over Mr. Hill's payment history on his home loan, but the Defendant, Lakeview, further stated that his loan history looked great which is why he was being offered the option to refinance.

8.      Based on these events, Mr. Hill ceased working on any other refinancing options available to him at the time and decided to stick with Lakeview because of their prior history and the representations made by Lakeview explaining that he was already approved for the refinancing option given to him.

9.      However, weeks later Lakeview denied the refinancing of Mr. Hill's home, claiming that his payment history with LoanCare was the reason for his denial.

10.     Mr. Hill immediately knew this was a mistake and/or Lakeview was not being honest or transparent for why his loan refinancing was denied.

11.     In addition, a Lakeview representative, Eric Abner, brought the potential payment discrepancies *prior* to the denial of the refinancing to Mr. Hill's attention, at which point Mr. Hill explained the reasons for the misreporting by LoanCare.

12. Most importantly, during this same conversation Eric Abner acknowledged the error by LoanCare, and once again confirmed to Mr. Hill that his refinancing would be good to go.

13. What's more, months prior to this refinancing application, Mr. Hill spoke with both Defendants concerning his payment history because he noticed discrepancies with LoanCare and their payment history covering his account and the account listed in this dispute.

14. Specifically, LoanCare was not crediting Mr. Hill's payments accurately, as he would make multiple payments on his home loan prior to the due date of his monthly statement; these multiple payments, made to satisfy each monthly statement, were catalogued primarily as payment toward principal, which flagged Mr. Hill's account as late and/or delinquent.

15. However, both Defendants acknowledged the payments from Mr. Hill as both timely and in full as it related to his monthly mortgage payments and prior to his denial letter to refinance.

16. Lakeview was made aware of the discrepancies on Mr. Hill's payment history yet failed to acknowledge this fact, or that the LoanCare report was inaccurate in any way. They alleged simply, after denying the refinance of Mr. Hill, that his "payment history" was to blame.

17. As it relates to breach of contract, Mr. Hill would argue that there was an implied in fact contract based on the representations made by Lakeview, which altered the original terms of his Loan Agreement with the Defendant, and which Mr. Hill relied upon when moving forward with refinancing his home, i.e. ceasing any other attempts to refinance his home through other mortgage lenders.

18. In addition, Plaintiff would also state that the Defendants, both Lakeview as the holder of the mortgage and LoanCare as the servicer of the mortgage, failed to uphold their contractual obligations when they knowingly misapplied the mortgage payments of Mr. Hill, failed

to correct these misapplications, or in the alternative at least note the misreporting which is what was presumably used by Lakeview to deny his refinancing.

19. Lakeview called Mr. Hill, offering to refinance his home at 2.5% interest, told him he was approved and that the only thing left was the formalities of getting the agreement on paper; acting on this information, and under the reasonable belief that the Defendant, Lakeview, had indeed already approved him for refinancing his home loan, Plaintiff ceased any additional or further attempts to secure refinancing on his home based on the representations given by Lakeview.

20. The failure of Lakeview to honor their representations, in effect, caused Mr. Hill to lose out on other financing options with similar 2.5% interest rates, currently the market has home financing around 6% (double his current interest rate).

21. Further, Mr. Hill then and now pays for Private Mortgage Insurance ("PMI") in the amount of $277.39 each month; however, such insurance and payment would no longer be needed had Lakeview honored the refinancing agreement they offered to Mr. Hill.

22. Short of establishing breach of contract, or implied breach of contract, the Plaintiff would request leave to file an Amended Petition wherein he can allege promissory estoppel or assert other claims to defend his right to remedy under Texas contract law.

b.   **Plaintiff's RESPA claims against Defendants are Properly Pled**

23. Defendants, Lakeview and LoanCare, violated the Real Estate Settlement Procedures Act (RESPA) through failing to comply with RESPA requests made by the Plaintiff, or through failure to adequately respond. *See* 12 U.S. Code §2605(e), creating a duty to respond to inquiries made by borrower; consumer rights to claims under RESPA may also be triggered through misapplication of loan payments (*see Original Petition*).

24. Failure to comply with 12 U.S. Code §2605(e) entitles the borrower to damages, whether actual or additional, along with costs, *see* 12 U.S. Code §2605(f)(1) and (3).

25. Specifically, Mr. Hill in his Original Petition argued and showed the following: (1) that a clear error was occurring prior to being offered to refinance his home by Lakeview; (2) that at least LoanCare was aware of this mistake well ahead of both the offer to refinance and the QWR sent out by the Plaintiff; (3) that the errors were represented, both prior to and in response to the QWR, to have been corrected by LoanCare; and (4) that Lakeview alleged in their denial letter that Mr. Hill's refinancing could no longer be offered due to his payment history related to late or non-payments.

26. Plaintiff filed for a Qualified Written Request ("QWR"), asking for information related to their loan account on their home on or around March 24, 2022, which was served to both Defendants.

27. Specifically, within the QWR Herrin Law, on behalf of the borrower, Mr. Hill, requested payment history and notes taken by LoanCare and Lakeview in order to determine whether there were any discrepancies within the account as the representations made by the Defendants ((a) that Lakeview denied the refinancing due to payment history (b) while LoanCare stated in their RESPA response that no such blemishes on Plaintiff's payment history existed or had existed).

28. 12 U.S. Code §2605(e)(1)(A), require that the Servicer first supply information requested by the borrower ("or agent of the borrower" 260(e)(1)(A)), and to "include a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *See* U.S. Code §2605(e)(1)(B)(ii).

29. Part RESPA is to protect homeowners from misreporting on their payment history for their home loans, along with credit history.

30. Borrower, Mr. Hill, sent a RESPA request to obtain details as to why Lakeview was showing late or non-payment on his mortgage loan history.

31. Defendant, LoanCare's response, on or around April 11, 2022, was that, "we have no record of reporting the account delinquent since the account has been under our care. That account reflects current and next due for the May 1, 2022 payment."

32. In essence, Mr. Hill was being denied the refinancing which was solicited to him by Lakeview because of his payment history, but told by his mortgage servicer and Defendant, LoanCare, that there were no payment delinquencies or any other payment issues which would have led to the denial of his refinancing application by Lakeview as represented by them.

33. It was this complete contradiction which led the Plaintiff into believing that the Defendant, Lakeview, was not being forthcoming or honest about why the loan refinancing was denied.

34. Further, Lakeview never responded to the QWR sent by the Plaintiff, and it is assumed that LoanCare was responding on behalf of both parties.

35. RESPA also requires a response to a QWR within 5-days (showing receipt of the QWR) and a response within thirty (30) days of receipt—none of which was given by Lakeview.

36. Again, Lakeview failed in entirely to provide any written response to the Plaintiff's original QWR sent out to them.

37. Finally, Defendants allege in their motion to dismiss that the Plaintiff has suffered no actual damages, positing that the original mailing of the QWR by the Plaintiff does not constitute

damages as any failure to respond would have had to occur post-QWR; however, as stated in a court case for the 11th circuit:

> Accepting Nationstar's [Defendant/Servicer] timing argument would mean gutting RESPA. Nationstar acknowledged at oral argument that borrowers can send notices of error only after an error has occurred. We can hardly ask borrowers to foretell errors that haven't happened yet. If RESPA reached only future harm, as Nationstar claims, § 2605(e)(2)(A)'s directive that servicers "make appropriate corrections in the account of the borrower [when there is an error], including the crediting of any late charges or penalties," would be meaningless because it could always be circumvented. *See Renfroe v. Nationstar Mortg.*, LLC, 822 F.3d 1241, 1246 (11th Cir. 2016)

38.   Moreover, under FRCP 12(b)(6), the courts review the original petition in a light most favorable to the Plaintiff in making its determination, and as stated above, the courts are not asked to perform factual or legal analysis when reviewing a motion to dismiss, but rather determine whether the facts, as alleged by the plaintiff, if taken as true, create an opportunity for relief under state or federal law.

39.   As such, Plaintiff has alleged that the Defendants failed to respond as per RESPA guidelines, and that misreporting, or misapplication of payments, had occurred but then was allegedly cured prior to the refinancing offer made by Lakeview—either this is true or LoanCare failed to cure the misapplication of payments which made Lakeview think Mr. Hill's payment history was flawed, thus leading to his denial for refinancing; alternatively, Plaintiff's payment history was cured and corrected and Lakeview's representations to the Plaintiff concerning the denial of his refinancing were and are patently false. In either case, the statements alleged in the Original Petition, and highlighted in this paragraph, cannot both be true.

40.   Plaintiff would add, that because of the misrepresentations by Lakeview, Mr. Hill has suffered additional, actual damages related to the denial of his refinance which stem from Lakeview's failure to respond to the original QWR in tandem with LoanCare's misreporting on Mr. Hill's account, initially, and failure to rectify or correct the misapplication of payments before forwarding the same

payment history to Lakeview; in other words, Plaintiff believes that at least one Defendant in this suit violated RESPA by either improperly responding, not responding, and/or misrepresenting facts as it related to his payment history, and that such violations caused him to be denied the refinancing of his home which will now cost him thousands of dollars.

41.  Whether the failure is on one party or the other is still uncertain, but as the Original Petition states, and as has been articulated herein, Lakeview denied the refinancing due to the Plaintiff's "payment history," i.e., late or missed payments, and LoanCare's only response to the QWR sent out was that the Plaintiff's payment history was perfect.

## I.  PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that Defendants', Lakeview and LoanCare, motion to dismiss all claims be denied, specifically as it relates to allegations of breach of contract and RESPA against Lakeview. Alternatively, Plaintiff requests leave to amend their complaint to include claims of promissory estoppel against Lakeview, or amend his Original Petition to address issues related to the Defendants' motion to dismiss on all of the Plaintiff's claims.

DATED:  December 28, 2022

By: *s/C. Daniel Herrin*

C. Daniel Herrin
State Bar No. 24065409
Herrin Law, PLLC
4925 Greenville Ave., Suite 455
Dallas, TX 75206
(469) 607-8551 (phone)
(214) 722-0271 (fax)
mycase@herrinlaw.com

-and-

By: */s/ Nicholas H. Shahbazi*
Nicholas H. Shahbazi
State Bar No. 24126819
Herrin Law, PLLC
4925 Greenville Ave., Suite 455
Dallas, TX 75206
(469) 607-8551 (phone)
(214) 722-0271 (fax)
nick@herrinlaw.com

**COUNSEL FOR THE PLAINTIFF**

**CERTIFICATE OF SERVICE**

    On December 28, 2022, Defendants counsel was served this response on all counsel/parties pursuant to Federal Rules of Civil Procedure 5(b)(2) via electronically and/or through the Court's ECF system on the following:

    Travis H. Gray
    travis@jackoboyle.com

    Nathan Frederick Smith
    nathan@mclaw.org

    COUNSEL FOR THE DEFENDANTS

*/s/ C. Daniel Herrin*
C. Daniel Herrin